**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| PEAK PIPE AND SUPPLY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:18-CV-410-L** |
| | § | |
| UMW OILFIELD (L) | § | |
| INTERNATIONAL LTD, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant's Motion to Compel Arbitration and Stay All Proceedings and Brief in Support (Doc. 7), filed March 9, 2018; Plaintiff's Response to Defendant's Motion to Compel Arbitration (Doc. 12), filed April 2, 2018; and Defendant's Reply to Plaintiff's Response to Defendant's Motion to Compel Arbitration (Doc. 13), filed April 16, 2018. On June 18, 2018, United States Magistrate Judge David L. Horan entered the Findings, Conclusions, and Recommendation of the United States Magistrate Judge ("Report"), recommending that the court grant Defendant's Motion to Compel Arbitration and Stay All Proceedings.[*]

**I.   Background**

The magistrate judge determined that Peak Pipe and Supply, LLC ("Peak Pipe" or "Plaintiff"), though a nonsignatory to the agreement containing the arbitration provision, should be equitably required to arbitrate its claims against UMW Oilfield International (L) ("UMW" or "Defendant") under a theory of direct-benefits estoppel. The magistrate judge determined that Peak

---

[*] In its order of October 30, 2018 (Doc. 17), the court ordered UMW Oilfield (L) International LTD to file a supplemental notice of removal to cure jurisdictional defects. In light of the supplemental notice filed by Defendant and the stipulation filed by Plaintiff Peak Pipe and Supply, LLC, the court determines that it has subject matter jurisdiction, as complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**Memorandum Opinion and Order – Page 1**

Pipe derived direct benefits under the exclusive Supply and Distribution Agreement (the "SDA") between Peak Pipe's sister company, SB International, Inc. ("SBI") and UMW, because SBI—pursuant to its exclusive contractual relationship with UMW—directed UMW to sell Oil Country Tubular Goods ("OCTG") to Peak Pipe. Peak Pipe would have otherwise been unable to purchase OCTG from UMW because of the exclusive SDA between UMW and SBI. The magistrate judge also addressed UMW's request for alternative relief—a stay of the case pending the final ruling by the arbitrational tribunal on Peak Pipe's jurisdictional challenge—which UMW contends is mandatory under 9 U.S.C. § 3. The magistrate judge determined that Peak Pipe, having failed to respond to this request, is deemed to consent to it under Federal Rule of Civil Procedure 8 and Local Rule 7.1 (d) and (h).

On July 2, 2018, Peak Pipe filed Objections to the Report (Doc. 15). On July 13, 2018, UMW filed a Response to Peak Pipe's Objections (Doc. 16). In the Objections and Response, the parties primarily dispute whether the magistrate judge applied the proper direct-benefits estoppel test. Additionally, as Peak Pipe's Objections do not address the Report's findings about UMW's request for a mandatory stay, UMW urges the court to accept the magistrate judge's determination that Peak Pipe is deemed to consent to the requested alternative relief.

In its Objections, Peak Pipe contends that the magistrate judge misapplied the direct-benefits estoppel doctrine by concluding Peak Pipe derived direct benefits under the SDA because Peak Pipe and UMW could not have entered into the purchase contract at issue "but for" the relationship between UMW and SBI. Peak Pipe contends that direct-benefits estoppel applies when a litigant sues based on the terms of an agreement that contain an arbitration provision while simultaneously asserting the provision lacks force. Peak Pipe contends that it is not suing UMW based on the SDA. It contends that its claims arise from UMW's alleged breach of three independent purchase contracts between Peak Pipe and UMW. Peak Pipe argues that it has not

attempted to enforce any contractual terms of the SDA and, therefore, has not directly benefited from that agreement. In arguing that the magistrate judge misapplied the estoppel theory, Peak Pipe relies primarily on *Jody James Farms, JV v. Altman Group., Inc.*, 547 S.W.3d 624 (Tex. 2018), for the proposition that, for direct-benefits estoppel to apply, more than a "but for" relationship must exist between the arbitration agreement and the agreement giving rise to liability.

In response, UMW contends that Peak Pipe focuses on an inapplicable test for direct-benefits estoppel—whether a party seeks to enforce the terms of the contract containing the arbitration provision—and that the proper test, correctly applied by the magistrate judge, is whether the party knowingly seeks substantial benefits that derive from the contract containing the arbitration agreement. UMW asserts that, in applying the proper test, the magistrate judge correctly concluded that Peak Pipe derived direct and substantial benefits under the SDA because the SDA enabled Peak Pipe to step into the shoes of its sister company SBI and receive products under the same conditions that SBI would have received them. UMW contends that, in arriving at this conclusion, the magistrate judge did not merely focus on a "but for" relationship but considered a host of factors, including "the contractual landscape existing between the companies, the benefits Peak Pipe gained by stepping in the shoes of SBI, the terms of the SDA that incorporate and anticipate the documents Plaintiff claims are 'independent contracts,' and the express representations and admissions made by SBI in relation to the disputed 'purchase contracts.'" Doc. 16 at 2. Finally, UMW contends that Plaintiff misapplies *Jody James Farms* because the Texas Supreme Court held that direct-benefits estoppel did not apply when the claims were entirely non-contractual in nature, whereas in this case, Peak Pipe's claims are indisputably contractual.

At the conclusion of its Response, UMW points out that Peak Pipe did not object to the magistrate judge's finding that it is deemed to consent to UMW's request for alternative relief,

and, accordingly, the magistrate judge's recommendation should be accepted by the court pursuant to 28 U.S.C. §636(b)(1), Federal Rule of Civil Procedure 72(b)(2), and Local Rule 53.1.

## II.     Mandatory Stay Under 9 U.S.C. § 3

As discussed, UMW seeks, as alternative relief, a stay of the case pending the final ruling by the arbitration tribunal on Peak Pipe's jurisdictional challenge. After UMW filed a notice of arbitration against Peak Pipe and SBI, claiming both parties had defaulted on purchase payments, Peak Pipe asserted that the tribunal had no jurisdiction over it because it was not a signatory to the SDA—the same issue before the court in this action. The question of whether Peak Pipe is bound to the SDA's arbitration clause is for the court, however, and not the arbitration tribunal. When the issue is the arbitrability of a dispute between a signatory to an arbitration clause and a nonsignatory, the courts have viewed that as a matter for the court to decide. *See Petrobras America, Inc. v. Vicinay Cadenas, S.A.*, 921 F. Supp. 2d 685, 693 (S.D. Tex. 2013) ("[I]n the recent Fifth Circuit cases applying direct-benefits estoppel . . . the district courts adjudicated the question of arbitration, rather than the arbitrators."); *see also QPro Inc. v. RTD Quality Services USA, Inc.*, 761 F. Supp. 2d 492, 497 (S.D. Tex. 2011) (citing *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1202 (2009)). The court, therefore, declines to grant UMW's request for alternative relief, in spite of Peak Pipe's repeated failure to respond to it.

Moreover, it is unsettled in the Fifth Circuit whether the Federal Arbitration Act's ("FAA") mandatory stay provision under 9 U.S.C. § 3 may be invoked by a signatory against a nonsignatory. The Fifth Circuit has stated that the provision does not apply to those who did not sign an arbitration agreement and are not otherwise bound by it. *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001). Other courts have adopted this approach, reasoning that the FAA "was not intended to mandate curtailment of the litigation rights of anyone who has not agreed to arbitrate any of the issues before the court." *Vallejo v. Garda CL Southwest, Inc.*, 2013 WL

**Memorandum Opinion and Order – Page 4**

6190175, *5 (S.D. Tex. 2013) (quoting *Mendez v. Puerto Rican Int'l Co.'s, Inc.*, 553 F.3d 709, 711 (3d Cir. 2009)). A nonsignatory may, however, apply the mandatory stay provision against a signatory if certain factors are present. *Waste Mgmt., Inc. v. Residuos Industriales Multiquam*, 372 F.3d 339, 343 (5th Cir. 2004). UMW has neither provided the court Fifth Circuit authority demonstrating the inverse is also true—that a signatory, in this case UMW, may apply the mandatory stay provision against a nonsignatory; nor has it argued that the *Waste Management* factors apply in support of UMW's position. For these reasons, the court determines that UMW has not shown it is entitled to a mandatory stay of this action under 9 U.S.C. § 3, regardless of whether Peak Pipe, under procedural rules, is deemed to consent.

### III.    <u>Direct-Benefits Estoppel Test</u>

The main issue between the parties is whether the magistrate judge applied the proper direct-benefits estoppel test in concluding that Peak Pipe, as a nonsignatory, is bound by the SDA's arbitration provision. The court, having reviewed the applicable law, determines that the answer depends on whether federal or state law applies to this specific issue. As the Texas Supreme Court has noted, "[a]lthough state law determines the validity of an arbitration agreement, courts have applied both federal and state law to determine the related, but distinct, issue of whether non-signatory plaintiffs should be compelled to arbitrate their claims." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737-39 (Tex. 2005) (citations omitted); *see also Wood v. PennTex Resources, L.P.*, 458 F. Supp. 2d 355, 361 (S.D. Tex. 2006) ("The courts have recognized, however, that while state law determines whether contracting parties agreed to arbitrate under their contract, it is not entirely clear what substantive law governs whether a nonparty must arbitrate.") (citation and quotation omitted). This tension arises because, while federal and state courts have concurrent jurisdiction to enforce the FAA, arbitration issues are a matter of contract between parties, and, accordingly, courts apply the contract law of the particular state governing the

agreement when determining whether the parties agreed to arbitrate. *See Washington Mut. Finance Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004).

The Fifth Circuit has expressly applied federal law in determining to what extent a nonsignatory is bound by an arbitration provision contained in a contract under which it is suing. *Id*. at 267 n.6. Acknowledging that whether a court should apply state law or "the federal substantive law of arbitrability" is often an uncertain question, the court determined that whether a nonsignatory is bound by an arbitration provision "presents no state law question of contract formation or validity" and, therefore, a court should "look to the federal substantive law of arbitrability to resolve this question." *Id*. (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-418 (4th Cir. 2000)). The court applied the doctrine of equitable estoppel as outlined by federal courts, without reference to state law, which governed the arbitration agreement. *Id*. In so doing, the court noted that it did not believe applying state law would compel a different result. *Id*.

The Fifth Circuit has not squarely taken a position to the contrary, but it has, in another case, applied a state court's definition of direct-benefits estoppel in deciding whether to compel arbitration, deferring to a district court's decision to apply state law. *See Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 609 (5th Cir. 2016).

UMW contends that the magistrate judge correctly applied the first prong of a two-part test set forth by the Fifth Circuit that states: "[a] non-signatory can 'embrace' a contract containing an arbitration clause in two ways: "*(1) by knowingly seeking and obtaining 'direct benefits' from that contract*; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (emphasis added).

**Memorandum Opinion and Order – Page 6**

Peak Pipe, on the other hand, relies on cases from the Texas Supreme Court holding that direct-benefits estoppel applies "to parties who seek 'to derive a direct benefit' from a contract with an arbitration agreement" by "seeking to hold the non-signatory liable based on the terms of an agreement that contains an arbitration provision while simultaneously asserting the provision lacks force." *Jody James Farms, JV*, 547 S.W.3d at 637 (quoting *G.T. Leach Builders, LLC v. Sapphire V.P.*, LP, 458 S.W.3d 502, 527 (Tex. 2015)). "When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability 'arises solely from the contract or must be determined by reference to it'—equity prevents a person from avoiding the arbitration clause that was part of the agreement." *Id*. (citations omitted). This inquiry, as UMW correctly notes in its Response, embraces the second prong of the Fifth Circuit's test in *Noble Drilling* that binds a nonparty to an arbitration agreement when such party "seeks to enforce the terms of that contract or asserts claims that must be determined by reference to that contract." 620 F.3d at 473.

The court determines that the magistrate judge, in applying the first prong of the *Noble Drilling* test, correctly determined that Peak Pipe is required to arbitrate its claims against UMW, and, accordingly, **overrules** Peak Pipe's objection. A party seeking to apply the first prong must show: first, that the nonsignatory "knowingly exploited the contract during the contract's existence," specifically by knowing about the existence of the contract and its terms and acting to exploit that contract; and second, that the nonsignatory "obtained some benefit under the contract." *In re Lloyd's Register North America, Inc.*, 780 F.3d 282, 291 (5th Cir. 2015). In this case, Mudit Agarwal ("Agarwal"), in his capacity as SBI's COO, directed UMW to sell to Peak Pipe and negotiated that transaction by providing the purchase contracts pursuant to Section 2.3 of the SDA ("Procedures on Order and Purchase"). At the time, Agarwal also served as COO of Peak Pipe. Peak Pipe, therefore, through Agarwal, knowingly exploited the terms of the contract when he, as

**Memorandum Opinion and Order – Page 7**

SBI's COO, instructed UMW to act according to its SDA by following procedures for negotiating shipments pursuant to their exclusive contractual relationship. Peak Pipe benefited by being able to purchase from UMW, a transaction that otherwise might not have occurred because, without SBI's instruction to complete that delivery, UMW would risk breaching its exclusive distribution agreement with SBI.

Although the court believes that a determination based on federal law would be legally sufficient to support its decision based on the Fifth Circuit's guidance in *Washington Mutual Finance Group*, it does not believe that applying Texas law would compel a different outcome. Peak Pipe repeatedly contends that its claims against UMW arise from "separate and distinct" purchase agreements that were negotiated between Peak Pipe and UMW. Doc. 15 at 3-4. Were this to be true, Peak Pipe might have valid claims against UMW based solely on the terms within the purchase agreements, which exist independently from and without any reference to the SDA. The record, however, reflects that the purchase agreements were not negotiated between Peak Pipe and UMW—they were negotiated between SBI and UMW, as shown in the e-mails between Agarwal and William Mao, using SBI-affiliated e-mail addresses, and Haniza Hashim, a UMW representative. Doc. 8-1, at 76-79.

The record also reflects that Section 13.6 of the SDA expressly anticipates and authorizes assignments of rights to third parties under the contract, subject to a requirement that the other party give prior written consent before any assignment is made. Doc. 12-1 at 23-24. Peak Pipe, in its Response to UMW's Motion to Compel Arbitration, cites this provision of the SDA that limits the ability of parties to make assignments. Doc. 12 at 3. Although Peak Pipe does not explain the import of referencing this provision, the court can think of no other reason than the implication that, if no written consent was given by UMW expressly authorizing SBI to make an assignment of its exclusive rights to purchase and receive OCTG shipments from UMW, the transactions

**Memorandum Opinion and Order – Page 8**

between Peak Pipe and UMW must have been pursuant to an independent contract and not an assignment subject to the terms of the SDA.

In its briefings to the court, UMW does not expressly argue that Peak Pipe was an assignee to the SDA, but it does contend that Peak "stepped into the shoes of" SBI and, in its Notice of Arbitration, takes the position that an assignment was made. Doc. 8-1 at 12. On November 22, 2017—before Peak Pipe filed its claims against UMW—UMW brought claims against SBI and Peak Pipe in the Singapore International Arbitration Centre for defaulting on payments that amounted to millions of dollars in unpaid invoices. Citing Section 13.6 of the SDA that governs assignments, UMW contends in the Notice that "the First Respondent [SBI] remains the primary obligor for any obligations arising under the SDA," and, accordingly, in its claim for relief, states that it seeks an order "directing the First Respondent [SBI] to pay sums outstanding under invoices issued to the Respondents in the sum of US $28,523,798.82 [the total amount owed by both SBI and Peak Pipe]." Doc. 8-1 at 12-13.

In the event that Peak Pipe is an assignee to the SDA, the scope of the parties' obligations under the purchase contracts cannot be determined without reference to the contractual obligations between UMW and SBI pursuant to the SDA. For example, Peak Pipe contends, in part, that UMW shipped it material that contained substantial and material defects. Section 5.4 of the SDA governs procedures for inspection and rejection of goods delivered by UMW to SBI, and Section 7 of the SDA governs warranties. Moreover, as UMW noted in its Reply, the purchase contracts are expressly anticipated as "ordering documents" under Section 2.3 of the SDA and function as the starting point for the fulfillment process, and are not, then, independent contracts as Peak Pipe contends. Def.'s Reply, Doc. 13 at 4. The court, therefore, determines that any claims Peak Pipe may have against UMW will depend on whether a valid assignment was made under the SDA. If a valid assignment was made, Peak Pipe's claims will arise from the contractual obligations of SBI

and UMW under the SDA. If an independent contractual relationship was formed between Peak Pipe and UMW as Peak Pipe contends, Peak Pipe must argue that no valid assignment was made pursuant to the SDA's assignment provision, in light of the circumstances surrounding how the three purchase orders were originally made between SBI and UMW. In either event, the court determines that UMW's alleged liability to Peak Pipe "must be determined by reference" to the SDA. *Jody James Farms, JV*, 547 S.W.3d at 637 (citation omitted).

Moreover, as recognized by the Texas Supreme Court, "In some cases, a nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself," and this determination "focuses on the nonparty's conduct during the performance of the contract" and "prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them." *In re Weekley Homes*, *L.P.*, 180 S.W.3d 127, 132 (Tex. 2005). Agarwal, in his dual role as COO for SBI and Peak Pipe, made representations to UMW that would reasonably indicate an assignment pursuant to the SDA, and not an independent contract, was created by purchase orders understood as "ordering documents" under Section 2.3. These representations led UMW to believe it was acting pursuant to the SDA in agreeing to ship OCTG to Peak Pipe. UMW, in its Notice of Arbitration, demonstrates that it was under the belief that an assignment was, in fact, made under the SDA and that SBI would remain the primary obligor for the shipments. Peak Pipe is now equitably prevented from avoiding the arbitration clause that was part of that agreement.

## IV. Conclusion

Having reviewed the record in this case, Report, and applicable law, and, having conducted a de novo review of the portion of the Report to which objections were made, the court determines that the findings and conclusions are of the magistrate judge are correct with respect to the determination that Peak Pipe is equitably required to arbitrate its claims and **accepts** them, **as**

**supplemented by this opinion**, as those of the court. With respect to the magistrate judge's determination that UMW's request for alternative relief should be granted, the court **rejects** that part of the Report for the reasons herein set forth. Accordingly, the court **grants** Defendant's Motion to Compel Arbitration and **orders** Plaintiff to arbitrate its claims against Defendant in the arbitration pending before the Singapore International Arbitration Centre.

Notwithstanding its determination regarding a stay of all proceedings in section II of this opinion, the court also declines to stay this action for another reason. Section 3 of the FAA, 9 U.S.C. §§ 1-16, provides for a stay pending arbitration; however, when all claims are subject to arbitration, the court may dismiss the action with prejudice. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (citations omitted). This is so because "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Id*. (citation omitted). A review of the record in this case establishes that all claims and issues are subject to arbitration. Having determined that all of the claims raised are appropriate for binding arbitration, and finding no other reason to retain jurisdiction over this matter, the court denies the request to stay this action and **dismisses it with prejudice**. *Alford*, 975 F.2d at 1164.

**It is so ordered** this 27th day of November, 2018.

*[signature]*
Sam A. Lindsay
United States District Judge